IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALLEN WALTER ROBBINS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:11cv567-WKW |
| | ) | (WO) |
| UNITED STATES DEPARTMENT OF | ) | |
| DEFENSE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Now pending before the court is the motion to dismiss (Doc. 13) filed by the Defendants, the United States Department of Defense and the United States Department of the Navy. Upon consideration of the motion and the plaintiff's response, the court concludes that the motion to dismiss is due to be granted.

### Standard of Review

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; see also *Iqbal*, 556

U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

More recently, in *Iqbal, the* Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 550 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* at 679. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Further, "[c]ourts do and should show a leniency to pro se litigants not enjoyed by

2

those with the benefit of a legal education." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132

F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 550 U.S. 662.   A

plaintiff's *pro se* status must be considered alongside the pleading requirements of *Twombly*

and *Iqbal*.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).   "A document filed *pro se* is

'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held

to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* at 94 (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   *Cf.* Fed. Rule Civ. Proc. 8(e) ("All pleadings

must be construed so as to do justice").   However, the leniency shown to *pro se* litigants does

not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise

deficient pleading in order to sustain an action." *GJR*, 132 F. 3d at 1369 (citing *Hall v.

Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991); *Pontier v. City of Clearwater*, 881 F. Supp.

1565, 1568 (M.D. Fla. 1995)).

## Facts

The relevant factual allegations of Robbins's *pro se* complaint[1] are as follows:

Allen Walter Robbins enlisted in the Navy in January 1959 when he was 17 years old.

(Doc. 1 pp. 2, 17).   In March 1959, Robbins was playing football with some other sailors

behind his barracks in San Diego, California, and he accidently ran into a steel clothesline

pole and was knocked unconscious.   (Doc. 1 p. 2).   He was transported by ambulance to a

hospital for treatment, and when he regained consciousness someone told him that he had a

---

[1]At this stage of the proceedings, for purposes of ruling on the motion to dismiss, the facts alleged in the complaint and reasonable inferences to be drawn therefrom are set forth in the light most favorable to the plaintiff.  *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

"brain concus[s]ion" on the left side of his head. (Doc. 1 pp. 1-2). Robbins was driven back to his barracks where he slept for three or four days. (Doc. 1 pp. 3-4). When he woke up, he had memory problems and pain in his lower back and left leg that never cleared up. (Doc. 1). He also had trouble "being sleepy." (Doc. 1 p. 5). He alleges that the Navy doctors who treated him did not do their job properly. (Doc. 1 p. 14).

Sometime after the concussion, Robbins was sent to his ship in Long Beach, California. (Doc. 1 p. 4). The ship went on a patrol off the Pacific coast and Robbins was granted 24 hours shore leave at an unidentified port. (Doc. 1 pp. 4-5). He checked into a hotel near the docks and fell asleep. (Doc. 1 p. 5). Robbins overslept because of his brain injury, and when he awoke his ship was gone. (Doc. 1 pp. 5-6). Robbins recalls going into convulsions and seeing some shore patrol or military police officers, and the next thing he can remember is a Marine escorting him into a dark cell in a brig that he believes was in Memphis, Tennessee. (Doc. 1 pp. 5, 13). Robbins refers to this cell as a torture chamber. (Doc. 1 p. 13). The walls of the cell were painted flat black and the lightbulbs gave little light because they were painted over (although the lights were usually turned off). (Doc. 1 pp. 5-7). Robbins was kept in total darkness until he began to suffer from panic attacks and claustrophobia. *Id*. He alleges that "[t]hey put me in the tor[ture] chamber with a brain concuss[]ion and cooked my mind." (Doc. 1 p. 14).

Robbins was flown from the brig in Memphis to a Marine prison in Portsmouth, New Hampshire, where he served the remainder of his sentence. (Doc. 1 pp. 8-9). During Robbins's confinement in New Hampshire, his panic attacks and claustrophobia grew worse.

4

(Doc. 1. p. 9).  Upon completion of his sentence, Robbins was given a general discharge, certain educational and employment benefits, and enough money to return to Alabama.  *Id.* Before receiving any benefits from the Alabama employment office, he received a letter from the Navy changing his status to "unfit" and terminating all of his benefits.  (Doc. 1 p. 10).

Robbins alleges that he has suffered from panic attacks, claustrophobia, and back and leg pain throughout his adult life and that he is now completely disabled as a result of his naval service. (Doc. 1 p. 13).  He seeks benefits from the Department of Veterans Affairs ("VA") for service-connected disabilities.  *Id.*  Robbins states in his complaint:

> What I need is back disability pay, disability check each month[,] ALL my benefits gave back and a check each month for my wife for what she has been going through[,] for the severe punishment I went through and the doctors not doing their job when I had the brain concuss[]ion in the first place.

(Doc. 1 p. 14).

## Discussion

## I.     Correction of Discharge Status

The court is "mindful that pro se complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hall v. U.S. Dep't of Veterans' Affairs*, 85 F.3d 532, 535 (11th Cir. 1996) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"). Construing Robbins's complaint liberally in light of his *pro se* status, it appears that Robbins is challenging his

Navy discharge designation of "unfit," which, Robbins contends, precludes him from receiving benefits.

Despite its potential to bring about an eventual reconsideration of veterans' benefits by the Department of Veterans' Affairs, Robbins's challenge to his discharge status is not barred by the provisions of the Veterans' Judicial Review Act of 1988 ("VJRA"), 38 U.S.C. §§ 7251 *et seq.*, which provides exclusive procedures for judicial review of the Secretary's decisions with respect to benefits.  *See Evans v. Marsh*, 835 F.2d 609, 612-13 (5th Cir. 1988).  However, Robbins should recognize that even if a court were to hold that his discharge status should be corrected, "the VA would still have the right to make its own independent determination regarding [his] current eligibility for benefits."  *Id*. at 612.  *Cf. Piersall v. Winter*, 435 F.3d 319, 211-12 (D.C. Cir. 2006) (holding that "the decisions of boards for correction of military records are subject to review" under the Administrative Procedure Act, 5 U.S.C.A. § 551 *et seq.*, even where the records at issue involve matters of non-judicial punishment).

Regardless, any challenge to Robbins's discharge status is nevertheless due to be dismissed for failure to state a claim upon which relief can be granted because Robbins has not exhausted his administrative remedies.  Subject to certain exceptions not applicable in this case, a veteran seeking review of his discharge status must exhaust his administrative remedies before seeking judicial relief.  *See Hodges v. Callaway*, 499 F.2d 417, 420-21 (5th

Cir. 1974))[2] ("Although federal courts are not totally barred from barracks rooms and billets, our access is restricted . . . . [A] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures."); *see also Gay v. United States*, 93 Fed. Cl. 681, 686 (Fed. Cl. 2010) (holding that the "plaintiff cannot bring a claim seeking to revise his discharge status because he has failed to exhaust his administrative remedies.").

10 U.S.C. § 1553 provides for proceedings before a military discharge review board which may "change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C. § 1553(b); *see also* 32 C.F.R. 724.101 *et seq.* (governing establishment and procedures of the Naval Discharge Review Board ("NDRB")). However, a request for review by the NDRB "must be made within 15 years after the date of the discharge or dismissal." 10 U.S.C. § 1553(a). It appears from Robbins's complaint that he was discharged in the 1960's, that he has not sought review by the NDRB, and that he failed to meet the 15 year limitations period for review by the NDRB. *See* 10 U.S.C. § 1553(a).

Although the limitations period for review by the NDRB appears to have expired, other administrative procedures may be available for the correction of military records. "The Board for the Correction of Naval Records ['BCNR'], composed of civilians appointed by the Secretary of the Navy, provides another means with which an aggrieved member of the

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

military 'may correct any military record ... when [the Secretary of the Navy acting through the Board] considers it necessary to correct an error or remove an injustice.'" *Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (quoting 10 U.S.C. § 1552(a)); *see also* 32 CFR § 723.1 *et seq.* (governing establishment and procedures of the Board for Correction of Naval Records). Section § 1552 requires that "the claimant or his heir or legal representative [must] file[] a request for the correction within three years after he discovers the error or injustice." 10 U.S.C. § 1552(b). However, "failure to file within three years after discovery" may be excused by the BCNR "if [the BCNR] finds it to be in the interest of justice." *Id*. Nevertheless, it is apparent from the face of the complaint that Robbins has not pursued any remedies before the BCNR and that this suit does not present a challenge to a decision of the BCNR.

In light of Robbins's failure to exhaust his administrative remedies, this court must dismiss his challenge to the discharge status reflected in his military records.[3] *See Hodges,* 499 F.2d at 423-24 (remanding with instructions that the district court dismiss a claim for correction of military records "without prejudice for failure to exhaust intraservice administrative remedies").

---

[3]In their motion to dismiss, the Defendants do not address Robbins's apparent contention that the military discharge status reflected in his military records is incorrect and should be changed. However, Robbins is proceeding *in forma pauperis*. (Doc. 4). 28 U.S.C. § 1915(e)(ii) provides that, with respect to a complaint filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . [the complaint] fails to state a claim on which relief may be granted." *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) ("find[ing] no error in the district court's dismissal of the complaint" of a nonprisoner proceeding *in forma pauperis* under 28 U.S.C. § 1915(e)(2)(B)(ii)); *Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) (Lay, J., concurring) ("Section 1915(e) applies to all [*in forma pauperis*] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.").

II.     **Disability Pay and the Tucker Act**

"[T]he Tucker Act, 28 U.S.C. § 1491, . . . authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims and waives the government's sovereign immunity for those actions." *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed Cir. 2005).  "The Tucker Act does not itself provide the substantive cause of action; instead a plaintiff must look elsewhere for the source of substantive law on which to base a Tucker Act suit against the United States." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (citations omitted). "That source must be 'money-mandating.'" *Chambers*, 417 F.3d at 1223 (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).  One money-mandating statute that can provide a basis for a Tucker Act claim is 10 U.S.C. § 1201, which provides that, under certain circumstances, upon determination that a service member is "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability," the Secretary of the Navy may retire the member with disability retirement pay.  10 U.S.C. § 1201; 10 U.S.C. § 101(9)(B); *see also Chambers*, 417 F.3d at 1223 (recognizing the viability of disability retirement claims under § 1201 and the Tucker Act).

Keeping in mind that *pro se* complaints, however inartfully drafted, are to be construed liberally, *Erickson*, 551 U.S. at 94, it appears that Robbins attempts to state a claim for disability retirement pay under § 1201 and the Tucker Act.  However, this court (the United States District Court for the Middle District of Alabama) does not have jurisdiction to review a Tucker Act claim for disability retirement pay.  Tucker Act claims must be filed

9

in the United States Court of Federal Claims.  28 U.S.C. § 1491(a)(1).

In addition, unlike claims for unlawful discharge, Tucker Act "claims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers*, 417 F.3d at 1224.  "'Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore . . . no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act.'"  *Id*. (quoting *Friedman v. United States*, 310 F.2d 381, 389 (Ct. Cl. 1962)).  It does not appear from the complaint that Robbins sought administrative review of his claim for disability retirement pay at the time of his discharge or at any time prior to filing his complaint.  *See Chambers*, 417 F.3d at 1225 & n.2.  Therefore, until he requests review from the BCNR, and until the BCNR's decision on his request becomes final, he cannot seek judicial review of his Tucker Act Claim for disability retirement pay.  *Chambers*, 417 F.3d at 1225.

Accordingly, Robbins's claim for disability retirement pay should be dismissed without prejudice for lack of jurisdiction and for failure to exhaust administrative remedies.  *See* 28 U.S.C.A. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); *Chambers*, 417 F.3d at 1225 ("[T]he Court of Federal Claims has no jurisdiction over disability retirement claims until a military board

10

evaluates a service member's entitlement to such retirement in the first instance.").

**III.   VA Benefits**

Robbins's *pro se* complaint seeks an award of veterans' benefits and appears to challenge a denial of benefits by the VA.  However, this court has no jurisdiction to award veterans' benefits or to review the denial of benefits.  See *Lee v. United States*, 2007 WL 564179, at *2-3 (M.D. Ala. 2007) (recommendation of the magistrate judge), and the authorities cited therein.

As the Defendants point out in their brief, "[a] claimant seeking veterans' benefits must first file a claim with the regional office of the VA. This is done by filling out VA Form 21-526, Veterans Application for Compensation and/or Pension. http://www.vba.va.gov/bln/21/compensation/#bm04."  (Doc. 14).

To challenge the denial of a claim for benefits, a veteran must follow the procedures set forth in the Veterans' Judicial Review Act of 1988 ("VJRA"), 38 U.S.C. §§ 7251 *et seq*. Under the VJRA, a veteran may obtain judicial review of decisions of the Secretary with respect to benefits "only by appealing to the Board [of Veterans' Appeals], then to the Court of Veterans Appeals, the Federal Circuit Court of Appeals[,] and the [United States] Supreme Court," in that order.  *Hall v. U.S. Dep't of Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir. 1996); *see also* 38 U.S.C. § 7101 *et seq*. (establishing and governing procedures before the Board of Veterans Appeals); 38 U.S.C. § 7251 *et seq*. (establishing and governing procedures before the United States Court of Appeals for Veterans' Claims).   "[A] challenge to a decision affecting benefits . . . is not reviewable in any [other] manner."  *Hicks v. Veterans*

11

*Admin.*, 961 F.2d 1367, 1370 (8th Cir. 1992); *see also* 38 U.S.C. § 511 (providing that, with certain exceptions not applicable in this case, "the decision of the Secretary . . . shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise," except in accordance with 38 U.S.C. § 7251 *et seq*.).

"By creating the Court of Appeals for Veterans Claims, Congress has provided the plaintiff an avenue of judicial review and with adequate and exclusive remedies by enacting comprehensive statutory schemes governing the administration of the Veterans' Judicial Review Act. See 38 U.S.C. § 7261." *Bell v. Hill*, 2008 WL 4877862, at *3 (M.D. Ala. 2008) (recommendation of the magistrate judge).   Accordingly, Robbins's claim seeking an award of veterans' benefits must be dismissed for lack of jurisdiction.  *See id.*; *see also Twombly*, 550 U.S. 544.

## IV.    Tort and Constitutional Claims

Robbins appears to attempt to state a tort claim in his complaint for medical malpractice by the Navy doctors who treated his head injury, and he possibly also attempts to state constitutional claims for violations of due process and cruel and unusual punishment during the time of his enlistment.   This court does not have jurisdiction to review such claims.  *See Chappell*, 462 U.S. at 304 ("Congress, the constitutionally authorized source of authority over the military system of justice, has not provided a damage remedy for claims by military personnel that constitutional rights have been violated by superior officers. Any action to provide a judicial response by way of such a remedy would be plainly inconsistent

with Congress' authority in this field."); *Feres v. United States*, 340 U.S. 135, 146 (1956) ("We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.").

## Conclusion

For the reasons stated above, it is the **RECOMMENDATION** of the Magistrate Judge that the motion to dismiss (Doc. 13) filed by the Defendants be **granted** and that judgment be entered in favor of the Defendants and against Robbins on Robbins's complaint.

Further, there being no other claims pending in this case, it is the **RECOMMENDATION** of the Magistrate Judge that this case be dismissed **without prejudice**. Further, it is

**ORDERED** that the parties are **DIRECTED** to file any objections to the Recommendation on or before **July 12, 2012**. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 28th day of June, 2012.


/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE